YOUNG E. KONG AND JEEN K. KONG, DECEASED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kong v. Commissioner
Docket No. 47819-86
United States Tax Court
T.C. Memo 1989-560; 1989 Tax Ct. Memo LEXIS 558; 58 T.C.M. (CCH) 378; T.C.M. (RIA) 89560; October 11, 1989; As corrected October 25, 1989 Kenneth G. Gordon and Mortimer L. Laski, for the petitioners. Jeffrey A. Sherman, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 245,769 in petitioners' Federal income taxes for 1982 and additions to tax of $ 12,288, under section 6653(a)(1), and 50 percent of the interest due on $ 245,769, under section 6653(a)(2). The issues for decision are whether unexplained bank deposits of petitioners represent unreported income, whether petitioners are entitled to deductions for supplies expense and contributions, and whether petitioners are liable for the additions to tax. All section references are to the Internal Revenue Code as amended and in effect for 1982. The notice of deficiency was addressed to Young E. Kong and *559 Jeen K. Kong, Deceased, and the petition was similarly captioned. At the commencement of trial, however, respondent moved to dismiss the petition for lack of jurisdiction as to Jeen K. Kong, Deceased, because the petition was not filed by an authorized representative. The Court took the motion under advisement and directed that petitioners respond to it in their brief. Petitioners have not provided any reason for denying respondent's motion, and it will be granted. For purposes of this opinion, Young E. Kong is hereafter referred to as petitioner. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner was a resident of Santa Monica, California, at the time she filed her petition. Petitioner was married to Jeen K. Kong, who died on March 23, 1982. Petitioner and Jeen K. Kong (Mr. Kong) came to the United States from Korea in 1975. Mr. Kong commenced a business known as AA Oriental Maintenance Company (AA Maintenance), which he operated until his death in March 1982. AA Maintenance was a proprietorship that furnished janitorial services for office buildings. During 1982, AA Maintenance *560 serviced nine office buildings pursuant to contracts. Customers were billed monthly and remitted payment for services by checks. Checks received from customers were deposited into checking account No. XXXXX7194 at Security Pacific National Bank (the business account). Deposits and miscellaneous credits to the business account during 1982 were as follows: January
$  80,051.82
February
50,060.72
March
43,051.60
April
70,092.71
May
49,198.70
June
53,628.16
July
61,431.76
August
55,563.84
September
35,844.10
October
71,196.62
November
160,243.48
December
12,317.55
Total
$ 742,681.06
During 1982, petitioner and Mr. Kong owned and rented to others a four-unit building and a house. Rents received were deposited into a joint checking account maintained by petitioner and Mr. Kong, No. 147117201 at Security Pacific National Bank (the rental account). Personal living expenses for petitioner and Mr. Kong were paid out of the rental account. Deposits and miscellaneous credits to the rental account during 1982 were as follows: January
$  22,042.51
February
19,191.19
March
34,711.88
April
26,219.40
May
15,817.29
June
17,285.64
July
28,584.60
August
19,836.97
September
4,531.82
October
26,444.21
November
9,926.25
December
14,259.66
Total
$ 238,851.42
*561 During 1982, petitioner and Mr. Kong also maintained a savings account at Home Savings and Loan Association in Santa Monica, California. Deposits into the savings account during 1982 totaled $ 187,000. Petitioner reported $ 437,191 on Schedule C of her 1982 Federal income tax return as gross receipts from AA Maintenance, and she reported $ 32,772 on Schedule E as gross receipts from rents and royalties. Nontaxable amounts deposited into petitioner's bank accounts during 1982 included the following: Transfers from Home Savings and Loan
to business account
$ 122,700
Transfers from Home Savings and Loan
to rental account
62,600
Transfers from checking accounts
to Home Savings and Loan 179,000
Transfers from rental account to business account
27,500
Transfers from business account
to rental account
27,500
Funds belonging to petitioner's mother
20,000
Funds for living expenses of
petitioner's nephews
30,000
Funds from inheritance from
petitioner's father-in-law
68,000
Gifts received at funerals
9,000
Proceeds from sale of home and
Social Security (not disputed)
116,631 Bank credits and returned items
9,089
*562 During 1982, AA Maintenance purchased supplies from Vernon Sanitation Supply Co. The total amount paid to Vernon Sanitation Supply Co. during 1982 approximated $ 30,000. Supplies purchased from other sources approximated $ 9,000. During 1982, petitioner was a member of Haeran Presbyterian Church and made contributions to that church in the amount of approximately $ 4,000. Petitioner also paid approximately $ 1,900 to the Full Gospel L.A. Church during 1982 because petitioner's husband received special care and food from that church during his illness. When AA Maintenance was established, petitioner and Mr. Kong kept a record of receipts and expenditures of the business. Similar records were kept for the rental receipts and expenses. During the course of an audit of petitioner's income tax return for 1982, the records were turned over to a certified public accountant. The records were lost during a relocation of the accountant's office. No efforts to secure replacement of the bank records of deposits and checks were made until shortly prior to trial in March 1989. By that time, the bank no longer had copies of the records. Prior to the time that petitioner's records were *563 lost, they were examined by an agent for respondent. In the statutory notice of deficiency, respondent determined that petitioners had unreported taxable income of $ 475,248.38, based on the total deposits to the business account, the rental account, and the savings account, reduced by amounts the agent identified as nontaxable transfers. Respondent also disallowed petitioners' supplies expense deduction and charitable contribution deductions and made other adjustments no longer in dispute. OPINION There are several problems in determining the correct resolution of this case. Foremost among those problems are the loss of petitioner's records and the necessity of taking petitioner's testimony through a Korean translator. Unfortunately, the parties have reacted to those problems by taking extreme and unrealistic positions. Petitioner contends that, contrary to well-established rules, respondent has the burden of proving that unexplained bank deposits are income. Bank deposits are prima facie evidence of income. ; , affd. . *564 See , affg. a Memorandum Opinion of this Court. The cases relied on by petitioner, , and , are not in point. Those cases, and others like them, deal with illegal income. Their rationale does not apply to cases where respondent has used a bank deposits computation. , affg. a Memorandum Opinion of this Court. Respondent contends that petitioner's testimony should be disregarded merely because it is "self-serving" and uncorroborated. Respondent has, however, conceded that the unreported income determined in the statutory notice should be reduced by $ 119,099.20. Respondent's revised determination allows credit for a total of $ 216,700 in interbank transfers, $ 116,631.42 in nontaxable deposits (from sale of petitioner's home and social security benefits), and $ 9,089 in bank credits and returned items. Respondent continues to dispute, however, petitioner's claim that she received during 1982 *565 funds belonging to her mother; funds provided by the parents of her two nephews for support of those nephews during 1982; funds representing an inheritance from her father-in-law; and gifts from friends at the funerals of her father-in-law and husband, in accordance with Korean custom. In a comparable situation, in , we stated: This case epitomizes the ultimate task of a trier of the facts -- the distillation of truth from falsehood which is the daily grist of judicial life. * * * * * * In the final analysis, our decision herein rests upon our evaluation of the entire record and the credibility of the witnesses who appeared before us. * * * Respondent seeks to discredit petitioner's testimony, in part, based on misstatements as to funds received from a bank loan. During the course of preparation for trial, petitioner's prior counsel presented to respondent's counsel copies of certain cashier's checks and a transmittal letter from a bank officer. Those documents had been altered to make them appear that the date of certain transactions was 1982 when the transactions in fact occurred in 1984. There was no *566 evidence, however, that petitioner participated in alteration of the documents or was aware of the alteration. Respondent's counsel did not cross-examine petitioner about the alterations, and former counsel did not testify at the trial. Respondent also argues that there are various contradictions and inconsistencies in petitioner's testimony, such as a statement on direct examination that the inheritance from her father-in-law was received pursuant to a will and an admission on cross-examination that there was no written will because Koreans do not have written wills. This inconsistency appears immaterial, and we accept petitioner's explanation that she was unaware of the legal significance of the existence of a "will" as a written document. Respondent argues and requests us to find as a fact that certain deposits to the savings account were not transfers because it is unlikely that a check drawn on a Security Pacific National Bank account and deposited in Home Savings one day would clear the account the next day. Respondent presented a witness from Security Pacific National Bank, who did not describe clearing procedures of either institution but stated the unsupported opinion *567 sought by respondent. We are totally unpersuaded by this minimal testimony and conclude that the available records suggest that such rapid clearing occurred on a regular basis. No other explanation of the recurring coincidence of withdrawals and deposits has been offered or can be found in the record. We believe that petitioner's testimony about these deposits is more reliable than the speculation of respondent's witness. Petitioner explained that she received funds from her mother, from the parents of her nephews, from her father-in-law's estate, and from friends at the funerals of her husband and her father-in-law. This testimony was uncontroverted and credible, and we accept it. Our acceptance of petitioner's testimony as credible on specific matters does not require that we accept her assertions that none of the unexplained bank deposits represent taxable income. There were apparent errors in petitioner's testimony and apparent misunderstandings as to some of the questions. The total amounts that she testified were nontaxable deposits exceeded the amount of unexplained deposits. The amounts that she testified were transfers from the business account to other accounts exceeded *568 the amount of cash reasonably available in the business account if petitioner's Schedule C, on which business income and expenses were reported, was correct. Petitioner's testimony demonstrated, as a minimum, that her memory was not infallible and that her understanding of the possible tax consequences of receipts was not reliable. She did not identify the customers of AA Maintenance or the amounts that each paid for service, although she testified that services were performed pursuant to contracts and monthly billing. Unfortunately for petitioner, the professionals advising her at the time the petition was filed in 1986 (not present counsel of record) did not take prompt steps to secure copies of third party records that would have been available in 1986 but were not available or not sought for trial in 1989. Petitioner, and not respondent, must bear the consequences of that inaction. Based on the entire record, we conclude that the nontaxable receipts deposited in petitioner's bank account during 1982 included the amounts recapitulated in our findings of fact. Our best judgment is that the transfers from the business account to the rental account approximated the transfers from *569 the rental account to the business account, based on petitioner's explanation of the reasons for the transfers. In reaching this conclusion, we have considered the nature of petitioner's income-producing activities and the absence of any testimony that petitioner led an extravagant life style or had large expenditures, or any other indicia that she had unreported income at the level determined by respondent. With respect to deductions, petitioner presented testimony of a representative of Vernon Sanitation Supply Co. to corroborate the amounts claimed on the tax returns as supplies expense. Respondent's disallowance of the total amount of supplies claimed was easily rebuttable in view of the nature of the business. In the absence of records, however, we cannot take the amount claimed on the return at face value. Using our best approximation on the entire record, we conclude that the total supplies expense during the year in issue was approximately $ 39,000. Petitioner presented no corroboration of her testimony about contributions. She indicated that amounts paid to the Full Gospel L.A. Church were for services and food provided to her husband during his illness. Such amounts *570 -- given in exchange for benefit received -- are not deductible. See, e.g., , affg. . Based on her testimony, we estimate the amount contributed to the Haeran Presbyterian Church, to which petitioner belonged during 1982, as $ 4,000, and she is entitled to a deduction for that amount. Finally, petitioner has the burden of proving that any underpayment of tax is not due to negligence or to intentional disregard of rules and regulations and that respondent erred in determining the applicability of the additions to tax under section 6653(a)(1) and (a)(2). . Petitioner and her accountant testified that certain records were kept, and the accountant testified that the records were lost during an office move. Neither, however, testified about the manner in which the tax return was prepared. There is no evidence that the lost records included a cash receipts journal or other record that would explain petitioner's bank deposits. There is no evidence that petitioner provided the tax return preparer with all relevant information *571 necessary to prepare the return. See . Petitioner has not proven that she is not liable for the additions to tax. Decision will be entered under Rule 155.